UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TERRY ADKISON,

              Petitioner,

vs.                            Case No. 3:18-cv-1176-J-39MCR

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

              Respondents.

_____

**ORDER**

## I. INTRODUCTION

Petitioner, who is represented by counsel, challenges his state court (Duval County) conviction through an Amended Petition for Writ of Habeas Corpus (Petition) (Doc. 21) pursuant to 28 U.S.C. § 2254. He filed an Amended Memorandum of Law in Support of Petition Filed Under 28 U.S.C. § 2254 (Memorandum) (Doc. 22) as well. He is serving three consecutive life sentences for three counts of sexual battery. Petition at 1. Respondents filed a Response to Petition for Writ of Habeas Corpus (Response) (Doc. 23).[1] Petitioner, through counsel, filed a Reply to the

---

[1] The Court hereinafter refers to the Exhibits to the Appendix (Doc. 23) as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the document

Respondents' Response to Mr. Adkison's Petition for Writ of Habeas Corpus (Doc. 24). The Petition is timely filed. <u>See</u> Response at 13.

## II.  EVIDENTIARY HEARING

The pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, the Court is able to "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004). As the record refutes the asserted factual allegations or otherwise precludes habeas relief, the Court finds Petitioner is not entitled to an evidentiary hearing. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007). Petitioner has not met his burden of demonstrating a need for an evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), <u>cert</u>. <u>denied</u>, 565 U.S. 1120 (2012).

## III.  CLAIMS OF PETITION

Petitioner raises four grounds in the Petition:  (1) the Petitioner's constitutional rights were violated when the state

---

will be referenced.

trial court denied the Petitioner's motion to suppress; (2) the Petitioner's constitutional rights were violated when the trial court premised the Petitioner's sentence on his tardy remorse; (3) the Petitioner's constitutional right to effective counsel was violated when counsel failed to call a witness that would have supported the Petitioner's theory of innocence; and (4) the Petitioner's constitutional right to effective counsel was violated when counsel misadvised the Petitioner about testifying during his [first] sentencing hearing.  Petition at 4, 6-7, 9. These claims are exhausted.  Response at 13.

## IV.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. See 28 U.S.C. § 2254.  This statute "imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases."  Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam).  The AEDPA statute:  "respects the authority and ability of state courts and their dedication to the protection of constitutional rights."  Id.  Therefore, "[u]nder AEDPA, error is not enough; even clear error is not enough."  Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017) (per curiam)), petition for cert. filed, (U.S. Aug. 2, 2019) (No. 19-5438).

3

Applying the statute as amended by AEDPA, federal courts may not grant habeas relief unless one of the claims: "(1)'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)." Nance v. Warden, Ga. Diagnostic Prison, 922 F.3d 1298, 1300-1301 (11th Cir. 2019).

Thus, in order to obtain habeas relief, the state court decision must unquestionably conflict with Supreme Court precedent. Harrington v. Richter, 562 U.S. 86, 102 (2011). If some fair-minded jurists could agree with the lower court's decision, habeas relief must be denied. Meders, 911 F.3d at 1351. As noted in Richter, unless the petitioner shows the state court's ruling was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement, there is no entitlement to habeas relief. Burt v. Titlow, 571 U.S. 12, 19-20 (2013).

In undertaking its review, this Court is not obliged "to flyspeck the state court order or grade it." Meders, 911 F.3d at 1349. Indeed, specificity and thoroughness of the state court decision is not required; even if the state court fails to provide rationale or reasoning, AEDPA deference is due "absent a

4

conspicuous misapplication of Supreme Court precedent." Id. at 1350 (citation and quotation marks omitted).

Of importance, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). But, this presumption of correctness applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014).

Where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

Once a claim is adjudicated in state court and a prisoner seeks relief in the federal court system, AEDPA's formidable barrier to habeas relief comes into play, and it is very difficult for a petitioner to prevail under this stringent standard. As such, state-court judgments will not easily be set aside once the

Court employs this highly deferential standard that is intentionally difficult to meet. See Richter, 562 U.S. at 102. Although AEDPA does not impose a complete bar to issuing a writ, it severely limits those occasions to those "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts" with Supreme Court precedent. Id. In sum, application of the standard set forth in 28 U.S.C. § 2254(d) ensures that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, and not a mechanism for ordinary error correction. Richter, 562 U.S. at 102-103 (citation and quotation marks omitted).

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner raises claims of ineffective assistance of counsel. To prevail on his Sixth Amendment claims, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). See Brewster v. Hetzel, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either component).

In order to obtain habeas relief, a counsel's errors must be so great that they adversely affect the defense. In order to satisfy this prejudice prong, the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The standard created by Strickland is a highly deferential standard, requiring a most deferential review of counsel's decisions. Richter, 562 U.S. at 105. Not only is there the "Strickland mandated one layer of deference to the decisions of trial counsel[,]" there is the added layer of deference required by AEDPA: the one to a state court's decision. Nance, 922 F.3d at 1303. Thus,

> Given the double deference due, it is a "rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." Johnson v. Sec'y, DOC, 643 F.3d 907, 911 (11th Cir. 2011). And, for the reasons we have already discussed, it is rarer still for merit to be found in a claim that challenges a strategic decision of counsel.

Nance, 922 F.3d at 1303.

## VI. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Ground One

In the first ground of the Petition, Petitioner claims his constitutional rights were violated when the state trial court

denied Petitioner's motion to suppress. Petition at 4. He contends officers coerced him during custodial interrogation, and his inculpatory statement that he showed a knife to one victim and admitted having sex with the women was the result of coercion despite his request for an attorney early in the interrogation. Id. Basically, Petitioner argues his statements should have been suppressed because they were involuntary and in violation of his rights under Miranda[2] to terminate questioning.

The record demonstrates, prior to trial, Petitioner moved to suppress his statements. Ex. 3 at 65-71. The trial court on August 10, 2011, conducted a hearing on the motion. Ex. 6 at 564-652. Petitioner and two officers testified. Id. The trial court considered their testimony as well as the DVD recording of the interview and the two rights forms. Ex. 4 at 314.

Providing a detailed, written decision, the trial court denied the motion to suppress. Id. at 314-17. The court found the statements elicited from Petitioner during the police interrogation were not illegally obtained. Id. at 315. With citation to the relevant Supreme Court case law, Edwards v. Arizona, 451 U.S. 477 (1981), the trial court made several pertinent findings. Ex. 4 at 315-16. The court found Petitioner

---

2 Miranda v. Arizona, 384 U.S. 436 (1966).

invoked his right to counsel. Id. at 316. The court found the officers respected this invocation, as evidenced by their efforts to gather their belongings and the statement of Detective Devevo that they would be outside. Id. The court found the detectives conducted no further questioning of Petitioner, nor did they make any statements that they should have known were reasonably likely to elicit an incriminating response from Petitioner. Id.

Contrary to Petitioner's contentions, the court also found that after Petitioner invoked his right to counsel, Petitioner reinitiated the dialogue with the detectives. Id. Petitioner asked a question of the detectives. Id. Detective Devevo told Petitioner they were done as Petitioner had invoked his right to counsel. Id. Detective Devevo asked Petitioner if he desired to waive the right he had invoked, and Petitioner assured the detective he understood his rights and wanted to waive his rights. Id. At this point, the detective went over a second rights form with Petitioner, and Petitioner waived his right to counsel and proceeded to talk to the detectives. Id. at 316-17. Ultimately, the trial court held, "that, after reinitiating conversation with the detectives, the Defendant knowingly and intelligently waived his earlier request for counsel." Id. at 317.

On direct appeal, Petitioner raised the following issue: "[w]hether the trial court erred in admitting Appellant's

interrogation video into evidence over objection that his re-waiver of Miranda rights was coerced and not voluntary." Ex. 13 at ii.  He asserted the trial court erred in denying the motion to suppress.  Id. at 23.  With respect to the findings of the trial court, Petitioner argued the trial court erred in determining Petitioner's re-waiver of his Miranda rights was a product of his voluntary re-initiation of his interrogation.  Id. at 26. Petitioner urges this Court to conclude that the second waiver was a product of police coercion, involuntary, and certainly subject to suppression.  Id. at 27.  Petitioner relies on several factors, including his limited opportunity to sleep or eat, the physical setting of the interrogation, his emotional condition, the duration and nature of questioning, the officers' implication of promises, and suggestive questioning.  Id. at 30-40.

The First District Court of Appeal (1st DCA) affirmed the convictions.  Ex. 16.  The mandate issued March 20, 2014.  Ex. 17.

In his Memorandum, Petitioner urges this Court to find the Florida courts unreasonably applied the governing principles set forth in Edwards and its progeny, or alternatively, the courts unreasonably declined to extend the holding of Edwards to the facts of Petitioner's case.  Memorandum at 17.  In brief, Petitioner admits that the trial court appropriately identified the governing

legal principle set forth in Edwards, but Petitioner asserts the court unreasonably applied the decision to the facts of Petitioner's case. Memorandum at 21. In support, Petitioner states that there was no break between the request for counsel and further interrogation which resulted in Petitioner re-waiving his rights. Id. He argues there was no valid re-initiation of the conversation by Petitioner because the detectives never left the room. Id. at 30.

Apparently, Petitioner is claiming there was an unreasonable determination of the facts, and the state courts' failure to suppress evidence of the confession was based upon unreasonably applied governing principles set forth in Edwards. Upon review of the record, the factual findings of the state court were not unreasonable determinations of the facts based on the evidence presented at the suppression hearing. Indeed, these findings are presumed to be correct.[3] 28 U.S.C. 2254(e)(1). Petitioner has not met his burden of overcoming this presumption of correctness by clear and convincing evidence.

---

[3] The factual findings regarding the non-coercive nature of the interrogation are entitled to a presumption of correctness. See Harris v. Dugger, 874 F.2d 756, 762 (11th Cir.) (recognizing that subsidiary factual questions, including whether intimidation tactics were employed by the police, are entitled to a presumption of correctness), cert. denied, 493 U.S. 1011 (1989).

Furthermore, the state courts' legal determination was not contrary to established Supreme Court law, nor did it involve an unreasonable application of clearly established Federal law. See Edwards, 451 U.S. at 484-85 ("[A]n accused . . . having expressed his desire to deal with the police only though counsel, is not subject to further interrogation by the authorities . . . unless the accused himself initiates further communication, exchanges, or conversations with the police."). See Land v. Allen, 573 F.3d 1211, 1217 (11th Cir. 2009) (per curiam) (citing Lam v. Kelchner, 304 F.3d 256, 264 (3d Cir. 2002)) (recognizing, under the AEDPA habeas standard, the federal district court is required to determine whether the state court's legal determination of voluntariness was contrary to or an unreasonable application of Supreme Court precedent), cert. denied, 559 U.S. 1072 (2010).

This case is distinguishable from United States v. Lafond, No. 1:13-cr-92-01-WSD-LTW, 2013 WL 6269448, at *8 (N.D. Ga. Dec. 4, 2013). Here, Petitioner was properly given his Miranda warnings. He invoked his right to counsel. The detectives told Petitioner they were leaving because he had invoked his rights and they would be outside. Petitioner reinitiated contact with the detectives by asking questions. The detectives, quite wary, told Petitioner they could not converse with Petitioner unless he decided to waive his right to counsel, but reminded him it was his

decision.  Petitioner indicated he desired to waive his right to counsel, and once again, the detectives properly gave Petitioner his <u>Miranda</u> warnings.

Based on the totality of the circumstances, Petitioner voluntarily elected to waive his rights and voluntarily confessed.[4] The detectives scrupulously honored Petitioner's right to cut off questioning.  <u>Lafond</u>, 2013 WL 629448, at *8.  No questions were posed to Petitioner once he invoked.  <u>Id</u>. at *11.  Petitioner initiated further conversation and his statement was obtained in accordance with the Constitution as the officers properly gave Petitioner <u>Miranda</u> warnings for a second time.

Thus, to the extent Fifth and Fourteenth Amendment claims were raised and addressed, the adjudication of the state appellate court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on this ground because the 1st DCA's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and

---

[4] In order to determine whether a confession was voluntarily given, there must be "an examination of the totality of the circumstances[.]" <u>United States v. Lall</u>, 607 F.3d 1277, 1285 (11th Cir. 2010) (citing <u>Arizona v. Fulminante</u>, 499 U.S. 279, 287 (1991)).  After waiving, Petitioner made a limited confession to some of the acts.

was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground one is due to be denied.

## B.  Ground Two

In his second ground for relief, Petitioner claims his constitutional rights were violated when the trial court premised the Petitioner's sentence on his tardy remorse.  Petition at 6. Petitioner urges this Court to find the "[s]tate judge violated due process by premising life sentences in part on Petitioner's failure to timely admit remorse." Id.  Although Petitioner does not specifically identify the constitutional rights at issue in the body of the Petition, the Fifth Amendment provides: "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V.  A sentencing proceeding is part of "any criminal case." Mitchell v. United States, 526 U.S. 314, 327 (1999).  As such, "[t]he due process clause of the Fifth Amendment prohibits a court from punishing a defendant for exercising a constitutional right, such as the right to remain silent." Green v. State, 84 So. 3d 1169, 1171 (Fla. 3rd DCA 2012).

On appeal after re-sentencing, Petitioner raised one issue: "[t]he trial court erred in sentencing Mr. Adkison, based in part, on an unlawful sentencing characteristic." Ex. 20 at i.

- 14 -

Petitioner claimed the trial court's improper consideration of impermissible factors to support the severity of the sentence constituted a violation of Petitioner's due process rights.  <u>Id</u>. at 7.  The 1st DCA affirmed per curiam.  Ex. 23.

A brief procedural history will be provided to provide context for this claim.  At his original sentencing, Petitioner did not admit guilt or express remorse.  Instead, he said:

> The man you heard about in this courtroom is not me – was not me.  Prior to the day I got arrested, prior to being in this facility, was not me.
>
> I am not saying I am an innocent man. I'm not saying I am a guilty man.  But I wasn't living the right life.  I was running around with prostitutes, and I know I was.  More than one, More than two.  I wouldn't even start to count.

Ex. 6 at 717.

The trial court, in pronouncing sentence, opined:

> But one thing that really concerns me, and it was confirmed today by the defendant's statement, unfortunately, with respect to the current case, Mr. Adkison denies culpability and shows no remorse.
>
> Mr. Adkison did not mention the victims at all today.  He did not mention that he was sorry, that he regretted his actions.  I think he still maintains his innocence and that concerns me greatly.

<u>Id</u>. at 742.

The 1st DCA affirmed the convictions but vacated the sentences and remanded for resentencing because the trial court's oral pronouncement conditioned the sentence, in part, on Petitioner's lack of remorse and claim of innocence, in violation of his due process rights. Ex. 16. At re-sentencing on August 8, 2014, Petitioner admitted his guilt. Ex. 19 at 46. When asked when he decided to admit guilt and express remorse at re-sentencing, Petitioner said "a month ago." Id. at 48. Petitioner testified he told his mother first. Id. He said the admission was for his salvation. Id. In closing argument, his counsel said Petitioner crossed the barrier to admit his crimes, seek help, and express his remorse. Id. at 64. Counsel argued it was genuine remorse and asked the court to accept it as genuine remorse. Id. at 69-70. The state asked the court to sentence Petitioner to three consecutive life sentences, and the defense asked for a downward departure. Id. at 61, 64-65.

During the re-sentencing, the court said it considered Petitioner's acknowledgment and acceptance of responsibility and guilt. Id. at 73. However, the court also considered "the timing of the acknowledgment[,]" finding "the mitigating affect of your acceptance of responsibility is severely limited because the timing of such and the posture of these proceedings today in light of that acknowledgment." Id. at 73-74. In this regard, the court

pondered the implication of Petitioner's admissions made long after Dr. Neidigh rendered his opinion, see id. at 64, an opinion upon which Petitioner was relying to seek a departure sentence, that concluded Petitioner was a prime candidate for counseling and any risk of recidivism was low. Id. at 64, 76. The record shows Dr. Neidigh had referenced the presence of sexually related anger and hostility that could be addressed with counseling, but also stated there would be a low risk of recidivism based on an evaluation that was done two years before Petitioner's acknowledgment of guilt. Id. at 76. See Ex. 6 at 709-747. The court said it was "left to ponder the impact on the doctor's conclusions from [Petitioner's] confession." Ex. 19 at 76. The court concluded neither doctors nor courts are vested with crystal balls to determine whether an individual will commit an offense in the future. Id.

The court provided an explanation for its sentencing decision:

> So we start with the scope of your crimes being profound, and you have no prior significant felony history, nothing commensurate with violence of this sort and in this manner, and that has been well argued by your lawyer. The reality of it is, there's not defendant – there's not one victim on one date, there is not two victims on two different dates, there are three victims from three different dates for which you were convicted. . . .

So while you lack a prior history, these crimes are severe, and it seems to the Court this, the question that is placed squarely before the Court, artfully stated by lawyers who are representing various interests is this, should your sentence be lessened because the victims of your crimes were prostitutes. That's the – that seems to the Court, if I were to peel the onion back a layer at a time to get to what is truly the core of the matter, which this Court has taken great time to review in great detail in this case, that seems to be the heart, the core of the sentencing decision.

And so the question is should your sentence be lessened because your victims were actively engaged in prostitution, willing participants in multiple sexual acts with multiple sexual partners for profit, and as crass as that sounds, this Court's answer to that question, should your sentence be lessened because they're prostitutes, is squarely no, it should not[.]

Id. at 76-78.

The court declined to depart downward, recognizing the "inherent dignity due every single human being[,]" and rejecting any contention that the sentences should be lessened because the victims were prostitutes. Id. at 78. Noting Petitioner's convictions for three crimes of armed sexual battery against three victims, the court sentenced Petitioner to consecutive life

sentences.[5] Id. at 79-80. The 1st DCA affirmed. Ex. 23. The
mandate issued April 23, 2015. Ex. 24.

This Court must consider whether the re-sentencing court's
remarks at sentencing "were so erroneous as to be equivalent to a
denial of due process." See Griffin v. Sec'y, Dep't of Corr., No.
8:13-cv-2025-T-36TBM, 2016 WL 5146611, at *11 (M.D. Fla. Sept. 21,
2016) (quoting Hannum v. State, 13 So. 3d 132, 135 (Fla. 2d DCA
2009)). In undertaking its review, the Court recognizes: "the
Constitution forbids the exaction of a penalty for a defendant's
unsuccessful choice to stand trial." Smith v. Wainwright, 664
F.2d 1194, 1196 (11th Cir. 1981) (citation omitted). Of course,
"[a]n accused cannot be punished by a more severe sentence because
he unsuccessfully exercised his constitutional right to stand
trial rather than plead guilty." Baker v. United States, 412 F.2d
1069, 1073 (5th Cir. 1969)[6] (citing Thomas v. United States, 368
F.2d 941 (5th Cir. 1966); United States v. Martell, 335 F.2d 764

_____

[5] Clearly the court was not persuaded this was isolated behavior.
The court expressed its profound dismay that Petitioner had raped
three different women at knifepoint on three different occasions
and rejected the defense's core contention that the sentence should
be lessened because the victims were prostitutes.

[6] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.
1981) (en banc), the Eleventh Circuit adopted as binding precedent
all decisions of the former Fifth Circuit handed down prior to
October 1, 1981.

(4th Cir. 1964); United States v. Wiley, 278 F.2d 500 (7th Cir. 1960)), cert. denied, 396 U.S. 1018 (1970).  That would be patently unconstitutional.

Here, the court did not punish Petitioner for exercising his right to stand trial rather than plead guilty.  United States v. Jackson, 390 U.S. 570, 581 (1968) (questioning any provision that discourages the assertion of the Fifth Amendment right not to plead guilty and any provision which deters the exercise of the Sixth Amendment right to a jury trial).  Indeed, the court expressly took into consideration Petitioner's expression of remorse and his admission of guilt.

At re-sentencing, the court said it considered Petitioner's acknowledgment and acceptance of responsibility and guilt, but also found the mitigating effect of Petitioner's pronouncement diminished by its timing and circumstance, noting the doctor's opinion was rendered long prior to Petitioner's admission of guilt and expression of remorse.  In addition, the court explained that the conduct for which Petitioner was convicted and to which he had confessed "is profound in its scope and heinous in its nature." Ex. 19 at 75.  The court described the raping of a human being while armed with a knife in a threatening manner is "beyond all doubt profound." Id.  Although the court took into consideration Petitioner's statement of remorse, the court declined to pronounce

a departure sentence, a matter well within its discretion.  Id. at 76.

In sum, although the court considered the request for mitigation based on remorse and admission of guilt, the court declined to impose a departure sentence, and as the state had requested, sentenced Petitioner to life, a legal sentence for armed sexual battery.  "Although remorse and an admission of guilt **may** be grounds for mitigation of sentence, the opposite is not true. Reliance on these impermissible factors violates the defendant's due process rights."  Brown v. State, 27 So. 3d 181, 183 (Fla. 2nd DCA 2010) (emphasis added) (quoting Ritter v. State, 885 So.2d 413, 414 (Fla. 1st DCA 2004)).

There is no indication in the record that the court harbored any belief of lack of remorse which affected the sentence imposed. See Griffin, 2016 WL 5146611, at *12 (finding a failure to establish the sentencing court violated the Fifth Amendment privilege against self-incrimination by impermissibly considering a lack of remorse in imposing its sentence).  Upon review of the record, the court did not rely on impermissible factors when sentencing Petitioner and Petitioner is not entitled to habeas relief on this ground.  Ground two is due to be denied.

The 1st DCA's decision, Ex. 23, is not inconsistent with Supreme Court precedent, and the state court's adjudication of

this claim is not contrary to or an unreasonable application of Supreme Court law or based on an unreasonable determination of the facts. The Court concludes AEDPA deference is due and Petitioner is not entitled to federal habeas relief.

### C. Ground Three

In ground three, Petitioner claims trial counsel was constitutionally ineffective for failure to call a witness that would have supported the Petitioner's theory of innocence. Petition at 7. In the supporting facts, Petitioner claims counsel was aware of a witness that would have supported the theory of innocence but failed to call her at trial. Id. In the Memorandum, Petitioner explains that this claim is based on counsel's failure to investigate and call Laura Kettler to testify on behalf of Petitioner at trial. Memorandum at 43. He asserts that Ms. Kettler could have corroborated his testimony that it was Petitioner's habit to place his pocketknife in the center console of the vehicle, in plain view. Id. at 45. Thus, Petitioner surmises that this testimony would have provided an explanation for why the victims were aware of the knife. Id. at 46.

This ground is due to be denied. The record demonstrates the following. After the state rested, upon inquiry as to whether anyone would be called by the defense other than the defendant, defense counsel told the court that she would recall Detective

Maynard.  Ex. 10 at 638.  The court asked Petitioner if there was any additional evidence he wished to present to the jury, and he responded in the negative.  Id. at 639.  The defense called Detective Maynard and Petitioner.  Id. at 641-740.  Defense counsel announced there were no additional witnesses, but counsel asked to publish the video to the jury.  Id. at 740.  The defense put on the DVD of the entire interview.  Id. at 753.  After playing the video, the defense rested.  Ex. 11 at 875.

In his Rule 3.850 motion, Petitioner claimed his trial counsel rendered ineffective assistance by failing to investigate and call Ms. Kettler.  Ex. 40 at 10-11.  In its order, the circuit court set forth the two-pronged Strickland standard before addressing the grounds for relief.  Id. at 18-20.  After the circuit court's introduction to the claim and its rendition of the relevant law, the court took the trial record under consideration.  It found the record demonstrated trial counsel told the court that one detective and the defendant would be called as witnesses.  Id. at 21.  The record also showed the court inquired of Petitioner about his decision to testify and specifically asked him if there were any other witnesses he wished to call to testify.  Id.  The circuit court noted the Petitioner responded no and advised the court there was no additional evidence he wished to present to the jury.  Id. Finding Petitioner's own testimony refuted his allegation of

defense counsel's ineffectiveness, the Court held Petitioner was not entitled to post-conviction relief. <u>Id</u>.

Through counsel, Petitioner briefed this claim of ineffective assistance of counsel on appeal of the denial of the Rule 3.850 motion. Ex. 41. The 1st DCA affirmed per curiam without explanation. Ex. 43. This affirmance is an adjudication on the merits entitled to AEDPA deference. This Court will employ the "look through" presumption; the Court will "look through" the unexplained decision to the last related state court decision that provides relevant rationale (the circuit court's decision denying post-conviction relief) and will presume the unexplained 1st DCA decision adopted the same reasoning as the circuit court. <u>Wilson</u>.

The Court is convinced that fair-minded jurists could agree with the circuit court's decision. As the state court reasonably determined the facts and reasonably applied federal law to those facts in rejecting the claim of ineffective assistance of counsel, Petitioner is not entitled to habeas relief. The state court's ruling is entitled to AEDPA deference. The 1st DCA affirmed the trial court's decision and its decision is not inconsistent with Supreme Court precedent, and the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts.

Thus, AEDPA deference is due, and Petitioner is not entitled to relief on ground three.

Of note, the proposed testimony of Ms. Kettle is cumulative testimony and the failure of counsel to present such testimony did not prejudice the defense nor did it constitute deficient performance. In order to demonstrate ineffectiveness, the decision must be so patently unreasonable that no competent attorney would have chosen that path. Moreover, "[w]hich witnesses, if any, to call . . . is the epitome of a strategic decision, and it is one that [a court] will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995), cert. denied, 516 U.S. 856 (1995).

The record shows Petitioner took the stand and described his habit of taking his pocketknife out of his pocket and placing it in the console of his vehicle. Ex. 10 at 653-54. Indeed, he provided an in-depth explanation for his placement of the knife in the center console due to the seatbelt assembly and the discomfort of keeping the pocketknife in his pocket while driving. Id. at 654. He repeatedly stated his knife remained in the center console during sexual relations with prostitutes while they were inside the vehicles. Id. at 665, 686.

By calling Petitioner, defense counsel established strong evidentiary effect through her questioning of Petitioner that he

routinely carried a pocketknife and would place it in the console of a vehicle where it was in plain sight for the prostitutes to see during sexual encounters.  Defense counsel did not need to call Ms. Kettle to get this point across to the jury.  Indeed, "failure to present cumulative evidence is not ineffective assistance of counsel."  Haag v. Sec'y, Dep't of Corr., No. 8:14-CV-1794-T-35AEP, 2017 WL 6550884, at *16 (M.D. Fla. Sept. 25, 2017) (citing Maharaj v. State, 778 So. 2d 944, 957 (Fla. 2000)).

Under these circumstances, there is not a probability of a different result sufficient to undermine confidence in the outcome of the trial if counsel had called Ms. Kettle.  Strickland, 466 U.S. 694.  Defense counsel presented abundant evidence that Petitioner would routinely place his knife in the center console of a vehicle, and counsel's performance was not ineffective for failure to call Ms. Kettle because similar evidence had already been presented.  Finally, Petitioner was not prejudiced by any failure of counsel to investigate or call Ms. Kettle to elicit further testimony that Petitioner habitually placed his pocketknife in plain view in the center console of a vehicle.

Based on the record, Petitioner is not entitled to habeas relief on ground three of the Petition.  He has neither shown deficient performance nor prejudice under the Strickland standard of review.

### D. Ground Four

In his fourth ground for relief, Petitioner claims his constitutional right to effective counsel was violated when counsel misadvised Petitioner about testifying during his [first] sentencing hearing. Petition at 9. In the supporting facts, Petitioner asserts trial counsel misadvised him about whether he should show remorse during the first sentencing proceeding. Id.

This claim has no merit. Regina Wright represented Petitioner at the first sentencing proceeding. Ex. 6 at 710. On direct appeal, the 1st DCA vacated the sentence. Ex. 16. Therefore, any question of counsel's performance at the first sentencing proceeding is moot. At resentencing, Terry P. Roberts represented Petitioner. Ex. 19 at 34. Petitioner is serving a new sentence. Id. at 79-80. As such, Petitioner is not entitled to habeas relief on this claim of ineffective assistance of counsel at the first sentencing proceeding.

Petitioner exhausted this ground by raising it in a Rule 3.850 motion. Ex. 40 at 12-15. The circuit court denied the claim. Id. at 21-22. Petitioner appealed the denial of this claim, and the 1st DCA affirmed. Ex. 43.

In denying this claim, the court assumed arguendo counsel's performance was deficient in the first sentencing proceeding, but found Petitioner failed to show prejudice because the sentence had

been reversed on appeal and he received an entirely new sentencing hearing with a different judge. Ex. 40 at 22. Additionally, the court found the crime was not an isolated incident as Petitioner was found guilty of multiple sexual batteries. Id. Finally, the court found Petitioner's assertion that he decided not to admit his wrong doings and express remorse at the first sentencing hearing because of the advice of trial counsel was clearly refuted by the record. Id. The court referenced the record, which showed Petitioner testified under oath at the second sentencing proceeding that he did not decide to admit guilt and express remorse until a month prior to the second sentencing hearing. Id. Based on the above, the court denied relief. Id.

The record shows the circuit court relied on the Strickland two-pronged standard in reviewing Petitioner's claim of ineffective assistance of counsel. Ex. 40. In order to obtain relief under a Sixth Amendment claim of ineffective assistance of counsel, a defendant must not only establish deficient performance by counsel, but the defendant must also demonstrate prejudice under the two-pronged Strickland test. Of note, the court found Petitioner did not demonstrate prejudice under Strickland. Ex. 40 at 22. The court further found the record refutes Petitioner's claim of deficient performance regarding the advice of counsel. Id. As such, Petitioner could not prevail on his claim of

ineffective assistance of counsel.  See Bester v. Warden, 836 F.3d 1331, 1337 (11th Cir. 2016) (finding a petitioner must satisfy both prongs of the Strickland test in order to prevail on his claim of ineffective assistance of counsel), cert. denied, 137 S. Ct. 819 (2017).  The 1st DCA affirmed the circuit court's decision. Ex. 43.

The Court will "look through" the 1st DCA's unexplained decision to the circuit court's decision denying relief.  The Court assumes the 1st DCA adopted the reasoning of the circuit court.

Fair minded jurists could agree with the state court's ruling in rejecting this claim of ineffective assistance of trial counsel. With respect to this claim of ineffective assistance of counsel, AEDPA deference should be given to the state court's decision. The state court's ruling is well-supported by the record and by controlling case law, Strickland and its progeny.  The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts.  Petitioner is not entitled to habeas relief on ground four.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.      The Amended Petition for Writ of Habeas Corpus (Doc. 21) is **DENIED.**

2.      This action is **DISMISSED WITH PREJUDICE.**

3.      The **Clerk** shall enter judgment accordingly and close this case.

4.      If Petitioner appeals the denial of his Amended Petition for Writ of Habeas Corpus (Doc. 21)**, the Court denies a certificate of appealability.**[7]      Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.      Such termination shall serve as a denial of the motion.

---

[7] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of October, 2019.

_____
BRIAN J. DAVIS
United States District Judge

sa 10/2
c:
Terry Adkison
Counsel of Record